UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP *et al.* <br><br> Defendants. | Case No. 1:25-cv-03306-PLF |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION
TO NOTICE OF RELATED CASES**

This case challenges the President's use of 5 U.S.C. § 7103(b)(1) to exclude the U.S. Agency for Global Media ("USAGM") from the federal labor laws—stripping Plaintiff unions and their members of their collective bargaining rights—not on the national-security grounds required by § 7103(b)(1) but rather to retaliate against Plaintiffs for engaging in activities protected by the First Amendment, including the prosecution of a lawsuit that challenges the dismantlement of USAGM. This case is related to eight other cases pending in this district. *See* Dkt. No. 2 at 2 (listing cases). Seven of those cases—all of which are pending before this Court—are suits filed by labor organizations that also challenge the President's use of 5 U.S.C. § 7103(b)(1) in two interconnected executive orders to strip unions and their members of their collective bargaining rights in retaliation for exercising First Amendment rights. The eighth related case—which is pending before another court in this district—is the lawsuit in which Plaintiffs exercised their First Amendment rights to challenge the dismantlement of USAGM. Each of those eight cases is related to this case under Local Rule 40.5.

In March 2025, the President issued Executive Order 14251, *Exclusions from Federal Labor-Management Relations Programs* ("First Exclusion Order"), which amended Executive Order 12171 to eliminate labor rights for the vast majority of federal employees. *See* Dkt. No. 4-5 at 10–14.[1] That First Exclusion Order was accompanied by an official White House Fact Sheet explaining that the President had targeted "hostile Federal unions" and that "[c]ertain Federal unions have declared war on President Trump's agenda," including by "filing grievances to block Trump policies." ECF No. 4-5 at 16–18 ("March Fact Sheet"). The March Fact Sheet expressly referred to Plaintiff AFGE (the "largest Federal union") and concluded with a threat of further action, explaining that the President "supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction." *Id.* at 18.

In August 2025, the President made good on the threat in the First Exclusion Order by issuing Executive Order 14343, *Further Exclusions from the Federal Labor-Management Relations Program* ("Further Exclusion Order"), which stripped bargaining rights from federal employees represented by labor organizations that had refused to fall in line and had persisted in exercising their First Amendment rights. As its name indicates, the Further Exclusion Order was a continuation of and supplemented the First Exclusion Order. And as relevant here, the Further Exclusion Order added USAGM as an agency excluded from the federal labor laws. Plaintiffs represent employees at USAGM, and in the intervening period between the two executive orders, Plaintiffs had vigorously exercised their First Amendment rights to oppose the dismantlement of USAGM, including by litigating *Widakuswara v. Lake*, No. 1:25-cv-01015-RCL (D.D.C.).

---

[1] Page number references for filings in this case are to the file-stamped page numbers in the upper right-hand corner of the document.

This case readily meets the Local Rule 40.5 standard for relatedness to the seven cases pending before this Court that challenge the First Exclusion Order and the Further Exclusion Order because those cases grow out of the same events and involve common issues of fact.[2] In arguing to the contrary, the government relies on cases in which the purportedly related cases were far more attenuated from each other, as this Court recognized when denying a similar objection from the government in *AFL-CIO v. Trump*, No. 1:25-cv-02445-PLF, 2025 WL 2301989, at *5 (D.D.C. Aug. 11, 2025). This case is also related to the *Widakuswara* case under Rule 40.5 because the President's exclusion of USAGM from the federal labor laws was due to Plaintiffs' opposition to the dismantlement of USAGM through that litigation and through related grievances.

## I. This Case Is Related to the First Exclusion Order Cases Under Local Rule 40.5.

While ordinarily cases are assigned randomly, this District's Local Rules "contain an exception . . . in the interest of judicial economy, for 'related cases.'" *Singh v. McConville*, 187 F. Supp. 3d 152, 155 (D.D.C. 2016). Cases qualify as related, in relevant part, "when the earliest is still pending on the merits in the District Court and they . . . (ii) involve common issues of fact, or (iii) grow out of the same event or transaction." LCvR 40.5(a)(3). Applying these factors establishes that this case is related to the cases that are already before this Court challenging other agency exclusions from the federal labor law under 5 U.S.C. § 7103(b)(1).

---

[2] Because the government currently does not dispute that this case is related to the two cases that challenge the Further Exclusion Order—*National Weather Service Employees Organization v. Trump*, No. 1:25-cv-2947-PLF and *NTEU v. Trump*, No. 1:25-cv-2990-PLF ("*NTEU II*"), *see* Dkt. No. 20 at 2, 4 n.2—this response focuses on *NTEU v. Trump*, No. 1:25-cv-00935-PLF; *AFSA v. Trump*, No. 1:25-cv-01030-PLF; *FEA v. Trump*, No. 1:25-cv-01362-PLF; *AFL-CIO v. Trump*, No. 1:25-cv-02445-PLF; *NAAE v. Trump*, No. 1:25-cv-02657-PLF; and *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL. Also not relevant here is another related case that is currently before the United States District Court for the Northern District of California, *AFGE v. Trump*, No. 3:23-cv-3070-JD (N.D. Cal.).

Defendants object to the related-case designation of five challenges to the President's First Exclusion Order that are currently pending before this Court: *NTEU v. Trump*, No. 1:25-cv-00935-PLF; *AFSA v. Trump*, No. 1:25-cv-01030-PLF; *FEA v. Trump*, No. 1:25-cv-01362-PLF; *AFL-CIO v. Trump*, No. 1:25-cv-02445-PLF; and *NAAE v. Trump*, No. 1:25-cv-02657-PLF.[3] In each of those cases, labor organizations brought suit against the President and federal agencies to challenge the First Exclusion Order, which eliminated collective bargaining rights at agencies covering the vast majority of federal employees. Each suit includes a First Amendment retaliation claim, contending that the First Exclusion Order retaliated against the labor organizations for their protected speech and petitioning, as well as a claim that the Order is *ultra vires* in violation of statutory authority. *FEA* and *AFL-CIO* also bring Fifth Amendment procedural due process and contract abrogation claims.

The present case challenges a continuation of the President's retaliatory scheme against supposedly "hostile Federal unions." As in the prior cases, Plaintiffs are labor organizations challenging amendments to Executive Order 12171 to exclude federal agencies from the federal labor laws, similarly arguing that the exclusion is *ultra vires* and violates the First and Fifth Amendments. The Further Exclusion Order, which excluded USAGM, grew out of and is interconnected with the First Exclusion Order, which itself threatened additional exclusions in the future. *See* Dkt. No. 4-5 at 13 § 7. As Plaintiffs explain in their memorandum in support of a

---

[3] Notably, they have not objected to the designation of this case as related to *National Weather Service Employees Organization v. Trump*, which challenges exclusions made in both the First Exclusion Order and the Further Exclusion Order. *See* Compl. ¶¶ 52–58, No. 1:25-cv-2947-PLF (Sept. 2, 2025), Dkt. No. 1 (challenging as *ultra vires* exclusions including the USPTO Office of Chief Information Officer, part of the First Exclusion Order); *see also* No. 1:25-cv-2947-PLF, Dkt. No. 13. The importance of treating similar cases alike gives an additional reason to deny the government's objection to the relatedness of the other cases challenging the First Exclusion Order. *See Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010).

preliminary injunction, "the Further Exclusion Order carries out a threat announced by President Trump when the First Exclusion Order was issued," as contained in the March Fact Sheet. Dkt. No. 4-1 at 32. The court that adjudicates this case will therefore be faced with common issues of fact that overlap with the cases challenging exclusions under the First Exclusion Order. Among other things, the court will have to address the meaning and motivation behind the March Fact Sheet's conclusion that "President Trump supports constructive partnerships with unions who work with him; he will not tolerate mass obstruction[.]" Dkt. No. 4-5 at 18; *see, e.g.*, *NTEU v. Trump*, 780 F. Supp 3d 237, 256 (D.D.C. 2025) (noting this Fact Sheet language "suggests a retaliatory motive to punish unions for the 'war' they have 'declared [] on President Trump's agenda'"); *FEA v. Trump*, No. 1:25-cv-01362-PLF, 2025 WL 2355747, at *9 (D.D.C. Aug. 14, 2025) ("[T]he White House Fact Sheet reflects retaliatory motive[.]").

The government nonetheless contends (Dkt. No. 20 at 5) that this case lacks common issues of fact with the First Exclusion Order cases because Plaintiffs also cite other evidence to support their retaliation claim, such as the Fact Sheet issued in connection with the Further Exclusion Order (on August 28, 2025) and developments in the *Widakuswara* litigation. According to the government, "the prior cases rely on a different Fact Sheet and OPM guidance issued months earlier." *Id.* But these additional pieces of evidence do nothing to negate the common issues of fact that unquestionably exist, namely whether the President's § 7103(b) exclusions were motivated by retaliatory animus stemming from the plaintiff unions' First Amendment activities opposing the President's policies and whether the government's claimed "national security" rationale for those exclusions was pretextual. As set forth in the complaint and preliminary-injunction motion, with respect to both First Exclusion Order and the Further Exclusion Order, those questions implicate the March Fact Sheet and OPM guidance, which OPM notably has updated to make clear that it

applies equally to both exclusion orders. *See* Dkt. No. 4-5 at 20–25; Compl. ¶¶ 13–14, 87, 95; Dkt. No. 4-1 at 13–15, 23–25, 50 n.13.Those filings further demonstrate that the jagged line-drawing and overbreadth of the First Exclusion Order provides additional evidence that the Further Exclusion Order, which augments the First Exclusion Order, is *ultra vires*. *See* Dkt. No. 4-1 at 44–45. As such, "the Court will be required to make similar factual determinations in [these] cases," by examining the March Fact Sheet and the First Exclusion Order to determine "the defendants' justifications for their regulations and policies, and the defendants' [retaliatory] conduct and/or intent, if any." *Singh*, 187 F. Supp. 3d at 156.

The government similarly misses the mark in its argument that Plaintiffs "have presented to the Court facts specific to themselves attempting to satisfy the applicable standard" for their First Amendment and *ultra vires* claims. Dkt. No. 20 at 7. This Court correctly rejected a similar argument in *AFL-CIO*, where the government argued that the "protected activity of the plaintiffs in each case" was "necessarily based on entirely different set of facts in each case." *AFL-CIO*, 2025 WL 2301989, at *5. Two cases with some distinct facts will nonetheless be related under Local Rule 40.5 as long as they also share common issues of fact. As this Court explained, the relevant standard is whether there are "'common issues of fact,' not that the facts are 'identical.'" *Id.* And as in *AFL-CIO*, "the types of protected activity that are alleged to serve as the basis for each of the claims are the same: the filing of lawsuits against the Administration, the filing of grievances against the agencies, and the public advocacy against many of the same policies of the administration." *Id.*; *see* Compl. ¶¶ 53–85, 115–16, 128-129 (outlining Plaintiffs' lawsuits, grievances, and public advocacy).

Nor can the government credibly dismiss the overlapping factual questions raised by this case and the First Exclusion Order cases as merely "superficial." Dkt. No. 20 at 6. As in this Court's

rejection of the government's relatedness objection in *AFL-CIO*, "[t]he claims brought in each of the cases further supports the conclusion that the cases are related." *AFL-CIO*, 2025 WL 2301989, at *4. As in *NTEU*, *AFSA*, *AFGE*, *FEA*, *AFL-CIO*, and *NAAE*, Plaintiffs bring a First Amendment retaliation claim, Compl. ¶¶ 131–41, and an *ultra vires* claim challenging the President's invocation of 5 U.S.C. § 7103(b)(1), *id.* ¶¶ 142–52.[4] Plaintiffs also bring a Fifth Amendment procedural due process claim, *id.* ¶¶ 153–60, and a Fifth Amendment contractual abrogation claim, *id.* ¶¶ 161–65, similar to claims brought by the plaintiffs in *AFGE*, *FEA*, and *AFL-CIO*. The "substantial similarity between the claims in this case and" the other cases challenging presidential exclusions as unconstitutional and *ultra vires* "will necessarily implicate common issues of fact." *AFL-CIO*, 2025 WL 2301989, at *4. Here, where Plaintiffs challenge "the same types of defendants" using "the same types of claims" with "the same sets of facts and legal theories supporting those claims," their lawsuit is related to the other challenges to President Trump's invocations of 5 U.S.C. § 7103(b)(1) currently pending before this Court. *See AFL-CIO*, 2025 WL 2301989, at *5. The standard for relatedness set forth in Local Rule 40.5 is therefore satisfied.

## II.   This Case Is Also Related to *Widakuswara v. Lake.*

This case also grows out of the same events and shares common issues of fact with the *Widakuswara* case, which is pending before another court in this district. As a result, even if the Court concludes that this case is not related to the other exclusion order cases pending before this Court, the case is nonetheless related to the *Widakuswara* case under Local Rule 40.5.

As described above, when the President excluded most federal workers from the federal labor laws through the First Exclusion Order, the White House made clear that going forward

---

[4] *AFSA*'s *ultra vires* claim involved an action contrary to a provision in the Foreign Service Labor-Management Relations Statute instead of 5 U.S.C. § 7103(b)(1), but "the statutory text and structure of" of that statute and Chapter 71 "are similar in many material respects." *AFSA v. Trump*, 783 F. Supp. 3d 248, 256 (D.D.C. 2025).

exclusions under § 7103(b) would be based on whether the union representing employees at a particular agency was supportive of the President's agenda. In the Fact Sheet issued contemporaneously with the First Exclusion Order, the administration warned that the President would not tolerate unions deemed "hostile" but "supports constructive partnerships with unions who work with him." Dkt. No. 4-5 at 17–18.

Plaintiffs AFSCME and AFGE were not cowed and vigorously exercised their First Amendment rights to oppose the dismantlement of USAGM, most notably by challenging the legality of the dismantlement in federal court. In *Widakuswara*, they joined other organizations and individuals in challenging the Trump administration's dismantling of USAGM, bringing constitutional claims, APA claims, and *ultra vires* claims seeking to ensure that USAGM continued to operate as required by statute. AFSCME and AFGE vigorously litigated their claims and sought to enforce the injunctive relief they obtained, ultimately resulting in the depositions of Defendant Kari Lake and others to determine compliance with the court's orders. *See* Dkt. 4-1 at 14–17.

President Trump soon thereafter carried through on his earlier threat and further punished AFGE and AFSCME, excluding the workers they represented at USAGM from the federal labor laws. The First Amendment activity by AFGE and AFSCME to oppose the dismantlement of USAGM were the reason for that exclusion and not the national-security determination required by 5 U.S.C. § 7103(b)(1). The events and facts of the *Widakuswara* case are therefore inextricably intertwined with the events and facts of this case.

Moreover, Plaintiffs' claims in this case also raise common issues of fact with *Widakuswara* because the claims in this case are supported in part by evidence showing that Defendants sought to dismantle USAGM and Voice of America ("VOA"). *See* Compl. ¶¶ 45–51 (discussing Executive Order 14238, March 15, 2025 White House article "The Voice of Radical America," and actions

to stop broadcasting); Dkt. No. 4-1 at 13–14; *see Widakuswara v. Lake*, 779 F. Supp. 3d 10, 20–21 (D.D.C. 2025) (referring to same). As set forth in the complaint and the preliminary-injunction motion, the elimination of bargaining rights at USAGM is *ultra vires* in part because that elimination was done to facilitate efforts to dismantle the agency through mass layoffs on an accelerated timeline and because Plaintiffs' *Widakuswara* litigation and grievances had "stymyi[ed] the administration's efforts to dismantle and ultimately silence USAGM and VOA." Dkt. No. 4-1 at 39, 42. Both cases also involve questions about the restrictions that the statutory firewall imposed on USAGM between management and journalists. *See id.* at 43, 45; Compl. ¶¶ 126–131, *Widakuswara v. Lake*, No. 1:25-cv-01015-RCL (March 21, 2025 D.D.C.), Dkt. No. 1. Thus, this case is also related to *Widakuswara* under Local Rule 40.5.

### III. The Government Relies on Cases Addressing Lawsuits with Much Weaker Connections Than the Related Cases at Issue.

The government's reliance on cases in which a court has rejected relatedness under Local Rule 40.5 are inapposite because, in contrast to this case, they lacked a close factual link between the purportedly related cases.

First, the government's reliance (Dkt. No. 20 at 5–6) on the minute order in *Jenner & Block v. DOJ*, No. 1:25-cv-00916-BAH, 2025 WL 942426 (D.D.C. May 28, 2025) is misplaced. There, the court rejected a related-case designation connecting a case challenging an executive order targeting the law firm Jenner & Block to a challenge to an executive order targeting Perkins Coie LLP, explaining that while one order focused solely on servicing "clients disliked by the President" as motivating the order, the other also targeted the firm based on work done at DOJ by a former law firm partner, such that their underlying justifications did not "involve the same underlying events or facts." *Id.* at *1–2. In contrast, the present collection of related cases involve exclusion orders that invoke the same national-security justification in § 7103(b), common

evidence is at issue in each, and the same First Amendment-protected activity is being targeted in each case: union speech and petitioning on behalf of their members in opposition to the President's agenda that has led them to be targeted as "hostile Federal unions."

The government also cites *G.Y.J.P. v. Wolf*, No. 1:20-cv-01511-TNM, 2020 WL 4192490 (D.D.C. July 21, 2020), as authority that overlapping legal claims alone are not enough for relatedness under Local Rule 45.1. Dkt. No. 20 at 6. But the cases here are not related merely because of overlapping legal claims but rather because of issues of fact common to those overlapping claims. This case is therefore nothing like *G.Y.J.P.*, where the plaintiff "identifie[d] *no* facts common to both cases." *G.Y.J.P.*, 2020 WL 4192490, at *1.

Finally, the government argues that the cases here, like those in *Trump v. Committee on Ways and Means*, 391 F. Supp. 3d 93 (D.D.C. 2019), are merely "related in the 'colloquial[]' sense." Dkt. No. 20 at 6. But the cases in *Ways and Means* had a dramatically attenuated connection: the first case was a lawsuit by a congressional committee against federal agencies seeking to use a "*federal* statute" to "acquire the President's *federal* tax returns from a *federal* agency," while the second case was a lawsuit by the President suing to invalidate a New York statute as violating the First Amendment and bar its use by the congressional committee to obtain state tax returns. 391 F. Supp. 3d at 96. The court concluded the second First Amendment challenge had "nothing [to] do with the earlier-filed case," and held that judicial economy would not be served by relating cases "likely to turn on different statutes and focus on different officials' actions done at different times." *Id.* at 96–97. This case in contrast focuses on the actions of the same officials under the same statute as part of the same retaliatory scheme. *Ways and Means* is therefore far afield from this case.

Here, "judicial economy, which animates the 'related cases' exception," *id.* at 97, is furthered by treating challenges to the President's unlawful, retaliatory exclusions of agencies and their employees from federal labor protections in two linked executive orders as related. The "substantial overlap in both the factual underpinning and the legal matters in dispute" of each of the Exclusion Order cases are "such that judicial economy would be served by having these matters resolved by the same judge." *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 140 (D.D.C. 2010). And even if the Court concludes that this case is not related to the other exclusion order cases, it is nonetheless related to the *Widakuswara* case under Local Rule 40.5.

## CONCLUSION

The government's objection to Plaintiffs' notice of relatedness should be overruled.

Respectfully submitted,

Date: September 26, 2025

/s/ *Abigail V. Carter*
Abigail V. Carter (DC Bar ID: 474454)
John M. Pellettieri*
Lane Shadgett (DC Bar ID: 90009847)
J. Alexander Rowell (DC Bar ID: 1780007)
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W. Suite 1000
Washington, D.C. 20005
Tel: (202) 842-2600
Fax: (202) 842-1888
acarter@bredhoff.com
jpellettieri@bredhoff.com
lshadgett@bredhoff.com
arowell@bredhoff.com

*Counsel for Plaintiffs*
**Admitted pro hac vice*

Teague P. Paterson (DC Bar ID: 144528)
Matthew S. Blumin (DC Bar ID: 1007008)
Georgina Yeomans (DC Bar ID: 1510777)
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES,
AFL-CIO
1625 L Street NW
Washington, DC 20036
Tel: (202) 775-5900
Fax: (202) 452-0556
tpaterson@afscme.org
mblumin@afscme.org
gyeomans@afscme.org

*Counsel for Plaintiffs American Federation of State County and Municipal Employees, AFL-CIO (AFSCME) and AFSCME Local 1418*


Rushab B. Sanghvi (DC Bar ID: 1012814)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES, AFL-CIO
80 F Street NW
Washington, DC 20001
Tel: (202) 639-6426
SanghR@afge.org

*Counsel for Plaintiffs American Federation of Government Employees (AFGE) and AFGE Local 1812*